UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH DAVIS,

                              Plaintiff,
                                                      9:11-CV-1139
v.                                                    (GLS/TWD)

RUSSELL A. PERDUE, et al.,

                              Defendants.
_____

APPEARANCES:                                 OF COUNSEL:

JOSEPH DAVIS, 03992-070
Plaintiff *pro se*
FCI Ray Brook
P.O. Box 9009
Ray Brook, New York 12977

HON. RICHARD S. HARTUNIAN                     PAULA RYAN CONAN, ESQ.
United States Attorney for the
  Northern District of New York
Counsel for Defendants
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION and ORDER</u>

     This *pro se* prisoner civil rights action, commenced pursuant to *Bivens v. Six Unknown

Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), has been referred to me for

Report and Recommendation by the Honorable Gary L. Sharpe, Chief United States District

Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Joseph Davis alleges that

he was subjected to unconstitutional conditions of confinement at FCI Ray Brook.  (Dkt. No. 1.)

Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 35.) For the reasons that follow, I recommend that Defendants' motion be granted.

## I.    BACKGROUND

The following facts are derived from the operative complaint and are accepted as true for the purposes of deciding the pending motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Plaintiff is a federal inmate serving a twenty-six year sentence. (Dkt. No. 1 at 15 ¶ 23.[1]) He arrived at FCI Ray Brook on or about July 10, 1995. *Id*. Plaintiff was initially assigned to a conventional two-inmate cell. *Id*. ¶ 24. Plaintiff was removed from that cell in order to serve a disciplinary sentence. *Id*. When he was released from disciplinary confinement on or about July 14, 2010, Plaintiff was assigned to a six-inmate cell. *Id*. ¶ 25. Plaintiff has remained assigned to that cell since July 2010. *Id*. at 15-16 ¶ 25. The conditions in that cell are the subject of this action. *Id*.

Plaintiff alleges that the six-inmate cells were created in 2000 to accommodate an increase in the prison population. *Id*. at 16 ¶ 26. The cells were created by removing the walls separating two two-inmate cells and adding a bunk bed and two lockers. *Id*. This created living space for six inmates in a space originally designed for four inmates. *Id*. The six-inmate cells are about 174 square feet. *Id*. ¶ 27. The cells are furnished with bunk beds, lockers, a table, a sink, and a toilet. *Id*. The table measures twenty-four square inches and functions as a surface

---

[1]    Citations to page numbers in the complaint refer to the page numbers assigned by the Court's electronic filing system.

for food preparation, eating, games, reading, writing, and doing legal work. *Id.* at 16-17 ¶ 30. In March 2011, Plaintiff "found himself in conflict with another inmate . . . over the use of this table," which "nearly precipitated a physical altercation." *Id.* at 17 ¶ 30.

Plaintiff is assigned to a top bunk in the six-inmate cell. *Id.* at 17 ¶ 32. There are no ladders mounted to the bunks. *Id.* Instead, Plaintiff uses a plastic chair to climb in and out of his bunk. *Id.* The chair tends to slide. *Id.* ¶ 33. Plaintiff has fallen to the floor on several occasions. *Id.* Plaintiff has attempted to report these incidents, but the guards on duty refuse to document them in the housing unit's log book. *Id.* When no chair is available, Plaintiff uses the mattress and bedding of the lower bunk to step up onto his bunk. *Id.* ¶ 34. On "at least one occasion," this "almost precipitat[ed] an altercation" between Plaintiff and the inmate in the lower bunk. *Id.*

Plaintiff alleges that conditions in his housing unit are "unsafe and insecure." *Id.* ¶ 35. Between the hours of 10:00 p.m. and 6:00 a.m., only one guard is assigned to oversee two housing units. *Id.* at 17-18 ¶ 35. Each of these units holds 134 inmates. *Id.* at 18 ¶ 35. Plaintiff alleges that in "the event of a fight, disturbance or medical emergency, there may be no way to get the attention of the guard to attend to the emergency situation." *Id.* The cells do not have panic buttons. *Id.* Plaintiff alleges that he is personally aware of at least one occasion when an inmate was "mercilessly beaten, almost to death, by other occupants in his six-man cell, after the housing unit had been locked down for the night. The inmate[']s cries for help went unheard or were ignored by prison staff." *Id.* ¶ 36. That incident occurred in April 2007. *Id.* Plaintiff alleges that on November 28, 2010, an inmate whose cries for help were unheard or ignored by staff was sodomized by other inmates. *Id.* ¶ 37.

Plaintiff alleges that "maintaining the high level of sanitation expected by Defendants is

impossible" and that "sanitation is a recurring problem" in Plaintiff's six-inmate cell. *Id*. at 18 ¶ 38. Plaintiff alleges that he does not have access to cleaning materials after 9:00 p.m. *Id*. ¶ 39. He alleges that he is prohibited from storing such items in his cell. *Id*. at 18-19 ¶ 39.

Plaintiff alleges that with "the arrival of Warden Perdue at Ray Brook in February 2011, cell sanitation has assumed a greater priority." (Dkt. No. 1 at 19 ¶ 40; Dkt. No. 1-1 at 17-21.) This, Plaintiff alleges, has caused "higher tensions" for Plaintiff and other inmates housed in six-inmate cells because "[s]torage space – already at a premium – has become even more scarce with the emphasis on orderliness and tidiness." (Dkt. No. 1 at 19 ¶ 40.) Plaintiff alleges that "maintain[ing] a high level of sanitation" is "no easy task" because he receives only one can of cleanser every two weeks. *Id*. ¶ 41. Plaintiff has "found himself required to pay bribes (in the form of items from the inmate commissary and postage stamps, which function as the local currency)" to the inmate who distributes cleanser in order to receive adequate amounts. *Id*. ¶ 42.

Plaintiff alleges that he "has on several occasions attempted to use the toilet to defecate, only to find the toilet and/or the toilet seat stained with feces and unfit for use." *Id*. at 20 ¶ 43.

Plaintiff alleges that there are "chronic ventilation problems" in the six-inmate cells. *Id*. ¶ 44. Plaintiff alleges that the two vents in the cell provide heat but do not provide or circulate air. *Id*. The six-inmate cells are unventilated during evening hours and at night when the doors are locked. *Id*. During the summer the six-inmate cells are substantially hotter than other cells. *Id*. Plaintiff alleges that it is at least ten degrees warmer in the top bunks, where he sleeps, than in the lower bunks. *Id*. ¶ 46. During the summer of 2010, inmates opened the food tray slots in their cell doors to provide additional ventilation. *Id*. ¶ 45. Defendant Warden Perdue ended this practice in 2011. *Id*. Plaintiff alleges that he "has suffered through several common colds" and

insomnia due to the poor ventilation. *Id.* ¶ 47. In June 2011, Defendant Perdue issued a memorandum acknowledging problems with ventilation and excessive heat. (Dkt. No. 1 at 21 ¶ 48; Dkt. No. 1-1 at 22.) He reminded inmates that "[b]locking of vents within even one inmate cell substantially restricts the unit's entire ventilation system" and stated that inmates who obstructed vents "will be subject to appropriate misconduct." (Dkt. No. 1-1 at 22.)

Plaintiff alleges that there is no privacy in the six-inmate cell. (Dkt. No. 1 at 21 ¶ 49.) He alleges that this "has resulted in extreme tension" between the occupants of the cells. *Id.* Plaintiff alleges that he "has been occasionally required to interrupt his eating or reading when other inmates need to use the toilet" and that he "must necessarily disturb other inmates to obtain a measure of privacy to urinate or defecate." *Id.* After Defendant Perdue became warden, he directed that inmates use "a curtain in the cell while using the lavatory." *Id.*

In 2010, one of the inmates in Plaintiff's six-inmate cell was openly gay. *Id.* ¶ 50. This caused Plaintiff, who is straight, "great discomfort and unease, particularly while dressing or using the toilet." *Id.* Plaintiff alleges that this "situation would not obtain in a conventional two-inmate cell." *Id.* Plaintiff alleges that, according to Defendant Perdue's February 2011 memorandum, he could be disciplined if he attempted "to ensure a modicum of privacy in which to dress or . . . defecate ." *Id.* at 21-22 ¶ 51.

Plaintiff alleges that the six-inmate cell is "noisy and distracting" because of the sound of inmates coming and going "at all hours" and the "extremely loud industrial fans mounted high on the wall of the housing unit." *Id.* at 22 ¶ 52. These fans "sometimes operate 24 hours a day, particularly in the summer months." *Id.* The noise has interfered with Plaintiff's ability to sleep, which affects his job performance at the prison laundry. *Id.* ¶ 53. The noise has also disrupted

Plaintiff's "personal reading and legal activities." *Id.*

Plaintiff alleges that conditions in the six-inmate cell have created conflicts ranging "from shouting matches to pushing; and in one instance, almost one physical altercation." *Id.* ¶ 54. Plaintiff alleges that these conflicts are "attributable to the age, cultural, racial, geographical, and gang-related disparities and personalities among the inmates who are so confined." *Id.* at 22-23 ¶ 54.

Plaintiff alleges that all of the occupants of a six-inmate cell are punished when one inmate violates prison rules. *Id.* at 23 ¶ 55. In August 2011, staff issued a memorandum stating that "any cell that has to have the faucet repaired or replaced due to the tampering of the device by an inmate will result in all occupants of that cell being written an incident report . . . ." *Id.* Plaintiff is "personally aware of several incidents where all of the inmates in a particular six-man cell were removed and placed in administrative segregation for extended periods of time on account of a disciplinary infraction committed by one occupant in a six-man cell." *Id.* ¶ 56. Plaintiff alleges that the "ubiquitous presence of homemade intoxicants makes occupants of the six-man cells . . . particularly susceptible to disciplinary action." *Id.* at 23-24 ¶ 56. Plaintiff alleges that, during a July 2010 search for homemade intoxicants, a guard damaged the cell toilet and sink by climbing on them. *Id.* at 24 ¶ 58.

Plaintiff alleges that the six-inmate cells are searched more often than other cells and that, as a result, he "has had personal property disturbed, disrupted or wrongly confiscated by prison staff." *Id.* ¶ 57.

Plaintiff alleges that FCI Ray Brook "has been placed on lockdown status on many occasions" during his confinement there. *Id.* ¶ 59. "Several" of these lockdowns have been

"protracted." *Id*. The attachments to the complaint show that the facility was on lockdown for unspecified periods in August 2010 (Dkt. No. 1-1 at 14), October 2010 (Dkt. No. 1-1 at 15), and March 2011 (Dkt. No. 1-1 at 16). Plaintiff alleges that lockdowns "exacerbate the living conditions" in the six-inmate cells and "exponentially increase the tension among the inmates so confined." (Dkt. No. 1 at 24 ¶ 59.) Plaintiff alleges that during lockdowns, inmates receive "meager" bagged lunches for all three meals, receive only limited beverages (milk at breakfast and juice packets at lunch and dinner), are forced to go without bathing for "days on end," do not have access to laundry facilities, and cannot exercise. *Id*. at 24-25 ¶ 60. Plaintiff alleges that tempers flare as a result. *Id*. Plaintiff alleges that he "has personally witnessed several such physical altercations" and "was nearly involved in one such physical altercation himself." *Id*. at 25 ¶ 61.

Plaintiff learned from the former warden, Defendant Schult, that the American Correctional Association has "granted numerous waivers" to FCI Ray Brook "regarding its rated capacity and the prescribed square footage standards." *Id*. ¶ 63.

Plaintiff filed this action on September 26, 2011. (Dkt. No. 1.) Plaintiff seeks injunctive relief, the award of good-time credits, money damages, fees, and costs. *Id.* at 33-34. Defendants Perdue, Schult, David Porter, Anne Mary Carter, John Hensley, Max Thwaites, Phil Hamel, Joseph L. Norwood, Harrell Watts, and Robin Van Weelden now move to dismiss the complaint for failure to state a claim.[2] (Dkt. No. 35.) Plaintiff has opposed the motion. (Dkt. No. 52.) Defendants have filed a reply. (Dkt. No. 55-56.)

---

[2] Defendants Stephen Wagner and John Fehlner have not been served and thus have not moved to dismiss the complaint. (Dkt. Nos. 19 and 35-2 at 1.) This issue is discussed in Section IV of this Report-Recommendation.

## II.    LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

III.    ANALYSIS

A.    Exhaustion of Administrative Remedies

Defendants argue that several of Plaintiff's claims must be dismissed because Plaintiff failed to exhaust his administrative remedies.  (Dkt. No. 35-2 at 4.[3])  For the reasons discussed below, I find that Defendants are not entitled to dismissal on this ground at this stage in the litigation.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  Federal prisoners must comply with the Bureau of Prisons' ("BOP's") administrative process.  The Second Circuit has described that process as follows:

> BOP's procedural rules create a four-step administrative grievance system for prisoner complaints.  The first step requires inmates to "present an issue of concern informally" to the prison staff so that they could attempt to resolve it.  If the issue remains unresolved, the inmate can submit "a formal written Administrative Remedy

---

[3]    Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than the page numbers assigned by the Court's electronic filing system.

Request" to the institution staff member designated to receive such
requests. The inmate can appeal any adverse decision made at that
stage to the Regional Director, and then to the BOP's General
Counsel.

*Johnson v. Killian*, 680 F.3d 234, 238(2d Cir. 2012) (quoting *Johnson v. Rowley*, 569 F.3d 40, 45

(2d Cir. 2009)) (punctuation omitted).

A prisoner has no independent duty to plead facts plausibly suggesting that he exhausted

his available administrative remedies in order to state an actionable civil rights claim. *Jones*, 549

U.S. at 211-17. "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for

failure to state a claim." *Id.* at 216. If a prisoner chooses to plead facts regarding exhaustion,

and those facts show that he failed to exhaust his available administrative remedies, then his

complaint may be dismissed for failure to state a claim. *Id*. at 215-16.

Here, Plaintiff alleges that he "brought the prison conditions complained of to the

attention of prison authorities at all stages of the prison grievance procedure." (Dkt. No. 1 at 2.)

These grievances, he alleges, were "denied at all stages of the prison grievance procedure." *Id.*

Plaintiff has attached some grievances to the complaint. (Dkt. No. 1-1 at 1-13, 23.)

Defendants argue that the grievances attached to the complaint show that Plaintiff

exhausted his administrative remedies as to some of the conditions of which he complains in this

action. (Dkt. No. 35-2 at 4.) They argue, however, that the attachments show that Plaintiff did

not exhaust his administrative remedies as to other claims. *Id* Contrary to Defendants'

assertion, there is nothing in the complaint or the attachments thereto affirmatively indicating

that Plaintiff failed to exhaust his administrative remedies. Rather, Defendants appear to be

drawing an inference that Plaintiff did not exhaust his administrative remedies regarding various

issues because he did not attach documents to his complaint showing that he did so.

 As discussed above, a prisoner is not required to plead facts about exhaustion in order to state a civil rights claim.  *Jones*, 549 U.S. at  211-17.   Further, as discussed above, a court analyzing a motion to dismiss must draw all reasonable inferences in the plaintiff's favor. *Hernandez*, 18 F.3d at 136.  Adopting Defendants' argument would require the Court to draw inferences in their favor.  Therefore, I recommend that the Court deny Defendants' motion to dismiss the complaint for failure to exhaust administrative remedies.[4]

## B.    Conditions of Confinement

The complaint raises nine Eighth Amendment claims regarding Plaintiff's conditions of confinement.  I will address each claim separately.[5]

### 1.    Sanitation

Plaintiff makes two allegations about sanitation in the six-inmate cells.  First, Plaintiff claims that his access to cleaning materials is limited and that he is not allowed to store them in his cell.  (Dkt. No. 1 at 18-19 ¶ 39.)  Plaintiff claims that this limited access to cleaning materials

---

[4]    To the extent that Defendants argue that a failure to exhaust administrative remedies would divest this Court of jurisdiction (Dkt. No. 35-2 at 1), that argument is without merit.  The failure to exhaust administrative remedies is not a jurisdictional predicate to suit. *Richardson v. Goord*, 347 F.3d 431, 433 (2d Cir. 2003).  Rather, the PLRA's exhaustion requirement is "a mere codification of administrative exhaustion requirements."  *Id*. at 434. Thus, where an inmate fails to exhaust administrative remedies, the court retains jurisdiction to determine whether or not that failure to exhaust has been excused or whether the defendants have waived or are estopped from asserting the defense.  *See, e.g., Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).

[5]    Because I find that all of Plaintiff's claims should be dismissed on the merits, I have not addressed Defendants' arguments regarding personal involvement and qualified immunity.  (Dkt. No. 35-2 at 15-18.)

creates tension in the cell and forces him to bribe other inmates in order to maintain the level of cleanliness demanded by Defendant Perdue. *Id*. at 19 ¶¶ 40-42. Second, Plaintiff claims that on "several occasions" the toilet in the six-inmate cell has been "stained with feces and unfit for use." *Id*. at 20 ¶ 43.

Defendants move to dismiss Plaintiff's claims regarding sanitation. (Dkt. No. 35-2 at 6-7.) Defendants argue that Plaintiff has not alleged facts plausibly suggesting that he was exposed to an excessive risk to his health or safety. *Id*. at 6. Defendants are correct.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

To prove an Eighth Amendment claim, a plaintiff must establish an objective and a subjective component. *Id*. at 834. To prove the objective component of an Eighth Amendment conditions of confinement claim, a prisoner must show that the defendant's "act or omission ... result[ed] in the denial of the minimal civilized measure of life's necessities." *Id*. Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Here, Plaintiff has not alleged facts plausibly suggesting any such extreme deprivations.

Regarding cleaning materials, Plaintiff has not alleged that he was denied the minimal civilized measure of life's necessities. The facts alleged in the complaint show that Plaintiff had

access to cleaning materials, albeit not as frequently as he wished.  (Dkt. No. 1 at 18-19 ¶¶ 39, 41.)  Such inconveniences "are part of the penalty that criminal offenders pay for their offenses against society."  *Wesolowski v. Kamas*, 590 F. Supp. 2d 431, 434 (W.D.N.Y. 2008) (quoting *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985)) (granting defendants' motion for summary judgment of prisoner's claim that he was denied the specific cleaning supplies he requested) (*aff'd*, 409 F. App'x 476 (2d Cir. 2011)).  Therefore, I recommend that the Court dismiss this claim.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).  However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Id.* (citation omitted).  Here, it does not appear that Plaintiff could cure this defect with better pleading.  Therefore, I recommend that the Court dismiss this claim without leave to amend.

Regarding the cleanliness of the toilet, Plaintiff has not alleged sufficient facts about the duration or magnitude of the problem to state an Eighth Amendment claim.  In *Gaston v. Coughlin*, 249 F.3d 156 (2d Cir. 2001), the Second Circuit reversed a summary judgment entered in the defendants' favor where a prisoner presented evidence that the area directly in front of his cell was "filled" with human feces, urine, and sewage water for several consecutive days.  The Second Circuit stated that it was "unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled

with sewage and excrement for days on end." *Id.* at 166. Other courts considering protracted exposures to feces or sewage have similarly allowed the claims to proceed to trial. *See Willey v. Kirkpatrick*, No. 07-CV-6484 (MAT), 2013 U.S. Dist. LEXIS 14935, at *20-23, 2013 WL 434188, at *8 (W.D.N.Y. Feb. 4, 2013) (collecting cases).[6] Where the exposure is not protracted, courts are split as to whether the prisoner has presented a triable Eighth Amendment claim. *Id.*, 2013 WL 434188, at *9 (collecting cases). Where claims in shorter-duration cases have survived dispositive motions, they have involved appalling conditions such as a "feces-covered cell," a "waste-filled cell," or a cell with no working toilet. *Id.*

Here, Plaintiff alleges merely that on "several occasions" he found that the toilet in his cell was "stained with feces." (Dkt. No. 1 at 20 ¶ 43.) He does not allege that this condition persisted for a protracted period of time. Further, he does not allege the type of appalling conditions found by other courts to state Eighth Amendment claims in shorter-duration cases. Accordingly, I find that Plaintiff has not alleged facts plausibly suggesting the objective prong of his Eighth Amendment conditions of confinement claim regarding sanitation in his cell. Therefore, I recommend that the Court dismiss this claim with leave to amend.

## 2. Ventilation

Plaintiff alleges that poor ventilation in the six-inmate cells overheats the cells and has caused him common colds and insomnia. (Dkt. No. 1 at 20 ¶¶44-47.) Defendants move to dismiss this claim. (Dkt. No. 35-2 at 7-8.) Defendants argue that Plaintiff has failed to allege facts plausibly suggesting that the lack of ventilation was an extreme deprivation. *Id.*

---

[6] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Defendants are correct.

"The Eighth Amendment does not guarantee a certain type of ventilation system or a certain rate of air exchange." *Bolton v. Goord*, 992 F. Supp. 604, 628 (S.D.N.Y. 1998). A prisoner's allegation that a lack of ventilation made him uncomfortable is insufficient to state an Eighth Amendment claim. *See Ramirez v. Strange,* No. 3:08cv906 (AWT), 2010 U.S. Dist. LEXIS 99252, at *15, 2010 WL 3838002, at *6 (D. Conn. Sept. 21, 2010) (granting summary judgment to defendants on prisoner's claim that the prison's lack of air conditioning led him to nearly faint from the heat several times because prisoner's allegations did "not reflect an extreme deprivation of the need for habitable shelter, health or safety.").[7] Therefore, I recommend that the Court grant Defendants' motion to dismiss this claim with leave to amend.

### 3. Ladderless Bunk Beds

Plaintiff, who is a assigned to a ladderless top bunk, claims that he has fallen to the floor on several occasions using a chair to access his bunk. (Dkt. No. 1 at 17 ¶¶ 32-33.) He further alleges that he uses the mattress of the lower bunk to reach the top bunk when no chair is available, which "almost precipitat[ed] an altercation." *Id.* ¶ 34. Finally, Plaintiff alleges that he attempted to report these incidents to unnamed prison personnel who refused to document the falls in the housing unit's log book. *Id.* ¶ 33. Defendants argue that Plaintiff has failed to state an Eighth Amendment claim regarding this issue. (Dkt. No. 35-2 at 8-10.) Defendants are correct, albeit for different reasons than they assert.

Defendants cite myriad cases from around the country holding that the failure to provide

---

[7]     Defendants provided Plaintiff a copy of this unpublished decision with their moving papers. (Dkt. No. 35-3 at 22-30.)

ladders for prison bunk beds does not present a substantial risk of harm to prisoners and thus

does not violate the Eighth Amendment.  *Id.*  However, as my colleague Judge Treece has noted,

there is a "dearth of cases within the Second Circuit dealing with the issue of ladderless bunks"

and, in the Northern District of New York, there is "a trend of allowing cases alleging unsafe

prison conditions of this nature to proceed to trial."  *Jenkins v. Fischer*, No. 9:08-CV-0045

(GLS/RFT), 2010 U.S. Dist. LEXIS 142094, at *18, 2010 WL 6230517, at *5-6 (N.D.N.Y Sept.

8, 2010).[8]  I need not resolve the underlying constitutional issue because here, as in *Walker v.

Schult*, No. 9:11-CV-287 (LEK/RFT), 2012 U.S. Dist. LEXIS 41973, at *20-21, 2012 WL

1037441, at *7 (N.D.N.Y. Jan. 20, 2012),[9] Plaintiff has failed to allege the personal involvement

of any named defendant in the alleged constitutional violation.

      Under Second Circuit precedent, "'personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages.'"  *Wright v. Smith*, 21 F.3d

496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.

1991)).  In order to prevail on a civil rights cause of action against an individual, a plaintiff must

show some "tangible connection" between the unlawful conduct and the defendant.  *Bass v.

Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Here, as in *Walker*, Plaintiff alleges merely that he

"reported his fall to an unnamed unit guard."  *Walker*, 2012 WL 1037441, at *7; Dkt. No. 1 at 17

¶ 33.  This does not establish the personal involvement of any defendant.  To the extent that

---

     [8]     Defendants provided Plaintiff a copy of this unpublished decision with their
moving papers.  (Dkt. No. 35-4 at 1-11.)

     [9]     Defendants provided Plaintiff a copy of this unpublished decision with their
moving papers.  (Dkt. No. 35-3 at 52-60.)  *Walker* is currently on appeal to the Second Circuit.
*Walker v. Schult*, Case No. 12-1806.  The Second Circuit heard oral argument on January 30,
2013, and reserved decision.  (Dkt. No. 58.)

Plaintiff claims that Defendant Anne Mary Carter, the Assistant Warden, is personally involved because Plaintiff sent her a grievance mentioning that "getting on the top bunk is a problem because there aren't any ladders" (Dkt. No. 1-1 at 23), that argument is without merit. A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference ... by failing to act on information indicating that the violation was occurring." *Rivera v. Goord*, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000). Therefore, I recommend that the Court dismiss this claim with leave to amend.

### 4. Fear of Violence

Plaintiff alleges that conditions in the six-inmate cells cause him to fear for his safety. (Dkt. No. 1.) Specifically, Plaintiff alleges that "in the event of a fight, disturbance or medical emergency, there may be no way to get the attention of a guard to attend to the emergency situation" due to inadequate staffing and the lack of a panic button. *Id*. at 17-18 ¶ 35. Further, Plaintiff claims that "the age, cultural, racial, geographical, and gang-related disparities among the inmates" in the six-inmate cells create conflicts. *Id*. at 22-23 ¶ 54. Defendants move to dismiss these claims, arguing that a fear of violence does not satisfy the objective prong of an Eighth Amendment claim. (Dkt. No.35-2 at 14-15.) Defendants are correct.

Inmates' "fear of assault from their cellmates is not an objectively serious enough injury to support a claim for damages." *Bolton*, 992 F. Supp. at 627. Rather, to state an Eighth Amendment claim based on the threat of violence in multiple-inmate cells, a prisoner must allege facts plausibly suggesting that the multiple-inmate cell "results in a substantial risk of serious harm and that defendants know of the risk and disregard it." *Jones v. Goord*, 435 F. Supp. 2d

221, 238 (S.D.N.Y. 2006). As Judge Treece observed in *Walker*, a prisoner housed in a six-inmate cell at FCI Ray Brook who brings an Eighth Amendment claim regarding potential violence but merely "speaks in general overtones" about his safety concerns fails to state a claim. *Walker*, 2012 WL 1037441, at *6.

Here, Plaintiff alleges that there have been shouting matches and pushing and "almost one physical altercation" in his cell. (Dkt. No. 1 at 22 ¶ 54.) Plaintiff alleges that he is aware of staff being slow to respond when two other prisoners in six-inmate cells were attacked by their cellmates. *Id*. at 18 ¶¶ 36-37. One of these incidents occurred in April 2007, three years before Plaintiff was assigned to a six-inmate cell. *Id*. ¶¶ 25, 36. This indicates that Plaintiff is relying not only on incidents he personally observed, but on incidents he heard about from others. Plaintiff's fear is, therefore, based on some minor disagreements in his cell and on two incidents occurring in other cells in the eleven years between the creation of the six-inmate cells and the date Plaintiff filed his complaint in this action. This is insufficient to establish the objective prong of Plaintiff's Eighth Amendment claim. Therefore, I recommend that the Court dismiss this claim with leave to amend.

    5.    Privacy

Plaintiff alleges that there is no privacy in the six-inmate cell. (Dkt. No. 1 at 21 ¶¶ 49-50.) Plaintiff expresses particular concern about using the toilet in front of other inmates, particularly in front of an openly gay inmate housed in the six-inmate cell in 2010. *Id*. Defendants have not addressed this claim. However, I find that this claim is subject to *sua sponte* dismissal pursuant to 28 U.S.C. § 1915(e)(2). "The lack of privacy in a prison cell . . . is not sufficiently serious to meet the objective prong of the Eighth Amendment." *Walker*, 2012

WL 1037441, at *6 (citing *Bolton*, 992 F. Supp. at 627).  Therefore, I recommend that the Court dismiss this claim *sua sponte*.  I recommend that the Court dismiss the claim without leave to amend because better pleading would not cure the defect with this claim.

6.   Noise

Plaintiff alleges that the six-inmate cell is very noisy.  (Dkt. No. 1 ¶ 52.)  He alleges that the noise affects his ability to sleep, his personal reading, and his legal activities.  *Id.* ¶ 53. Defendants have not addressed this claim.  However, I find that this claim is subject to *sua sponte* dismissal.

The Supreme Court has stated that prison noise levels may implicate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 364 (1981) ("In determining when prison conditions pass beyond legitimate punishment and become cruel and unusual . . . [t]he court must examine the effect upon inmates of the condition of the physical plant [including] noise levels . . . .").  Previous decisions from this District have declined to find Eighth Amendment noise violations absent an allegation that the noise level caused physical harm to the plaintiff.  *See, e.g., Griffin v. Coughlin,* 743 F. Supp. 1006, 1018 (N.D.N.Y. 1990) ( "[T]he atmosphere at Clinton PC has been described as a 'Chinese fire drill,' 'Grand Central Station at break time,' and 'a fish market' . . . . [B]ecause the noise is inmate-generated, it is . . . difficult to characterize that noise as an impermissible 'harsh condition of confinement.' [Moreover], plaintiffs presented no evidence that the noise level at Clinton PC causes physical damage.").  Where the physical damage claimed by the plaintiff is a lack of sleep, previous decisions in this district have dismissed complaints for failure to state a claim.  *See, e.g., Walker*, 2012 WL 1037441, at *7 (citing *Phillips v. Roy*, No. 9:08-CV-878, 2011 U.S. Dist. LEXIS 96615, at *44, 2011 WL

19

3847265, at *15 (N.D.N.Y. Aug. 29, 2011) ("Plaintiff's allegation that Defendants failed to fix malfunctioning water pipes, resulting in noise which interrupted his sleep, fails to meet the objective element of an Eighth Amendment inquiry.")).

Here, Plaintiff does not allege any physical damage resulting from the noise levels in the six-inmate cell. Rather, he alleges only that he "has often experienced an inability to sleep, which affects [his] deportment generally and his ability to perform his job in the prison laundry, for which he must awaken at 5:00 a.m. on Mondays through Fridays." (Dkt. No. 1 ¶ 53.) Accordingly, Plaintiff has not stated facts plausibly suggesting the objective prong of his Eighth Amendment conditions of confinement claim regarding noise levels. Therefore, I recommend that the Court dismiss this claim with leave to amend.

### 7. Punishment and Search Policies

Plaintiff alleges that all of the occupants of a six-inmate cell are punished if one inmate violates prison rules. (Dkt. No. 1 at 23 ¶ 55.) Plaintiff states that he has heard of other inmates being placed in administrative segregation "for extended periods of time" as a result. *Id*. ¶ 56. Plaintiff alleges that the six-inmate cells are under greater scrutiny and searched more often and that he has had property disturbed or confiscated. *Id*. at 24 ¶ 57. Defendants have not addressed these claims. I recommend that the Court *sua sponte* dismiss these claims.

Plaintiff does not allege that he, personally, has ever been punished for a cellmate's actions. Plaintiff lacks Article III standing to bring constitutional claims on behalf of other inmates. *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Swift v. Tweddell*, 582 F. Supp. 2d 437, 449 (W.D.N.Y. 2008). Therefore, I recommend that the Court dismiss this claim *sua sponte* with leave to amend.

Regarding the cell searches, prisoners cannot assert Fourth Amendment claims regarding cell searches, even where the search is retaliatory or arbitrary. *DeMaio v. Mann*, 877 F. Supp. 89, 95 (N.D.N.Y. 1995) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights.") (*aff'd*, 122 F.3d 1055 (2d Cir. Sept. 14, 1995) (unpublished disposition)). Therefore, I recommend that the Court dismiss this claim *sua sponte*. I recommend that the Court dismiss this claim without leave to amend because better pleading would not cure the defect in the claim.

Finally, Plaintiff cannot state a claim regarding confiscated or damaged property. "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer,* 468 U.S. 517, 533 (1984) (emphasis omitted). This Circuit has held that "confiscation . . . [does] not constitute a Fourteenth Amendment violation for loss of property because of the availability of state court post-deprivation remedies" in the New York Court of Claims. *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir. 1996); *Jackson v. Burke,* 256 F.3d 93, 96 (2d Cir. 2001); *see also Parratt v. Taylor,* 451 U.S. 527, 544 (1981) ("Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process."), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). Therefore, I recommend that the Court dismiss this claim *sua sponte*. I recommend that the Court dismiss this claim without leave to amend because better pleading would not cure the defect in the claim.

8. Lockdowns

Plaintiff claims that during lockdowns inmates in the six-inmate cell are subject to exacerbated tensions, receive only bagged lunches for all three meals, receive only limited beverages, are not allowed to bathe, do not have access to laundry facilities, and cannot exercise. (Dkt. No. 1 at 24-25 ¶¶ 59-61.) Defendants move to dismiss these claims. (Dkt. No. 35-2 at 13.) I recommend that the Court dismiss these claims with leave to amend.

Regarding food and beverages, Plaintiff has not alleged that he was actually deprived of sustenance during lockdowns. Rather, he admits that he received three meals per day along with drinks at each meal during these periods. Accordingly, Plaintiff has not alleged facts plausibly suggesting that he was denied the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Therefore, I recommend that the Court dismiss this claim with leave to amend.

Regarding bathing, access to laundry facilities, and exercise, the claims should be dismissed with leave to amend because of the complaint's lack of specificity about how long these conditions lasted. A temporary suspension of showering privileges does not violate the Eighth Amendment. *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) (holding that a two-week suspension of shower privileges did not "suffice as a denial of basic hygienic needs."). Similarly, only a *protracted* lack of clean clothing raises personal hygiene concerns that may implicate the Eighth Amendment. *See Toussaint v. McCarthy*, 597 F. Supp. 1388, 1410-11 (N.D. Cal. 1984) (lack of laundry service for months violates Eighth Amendment), *aff'd in part, rev'd in part on other grounds*, 801 F.2d 1080 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987). Regarding exercise, "[a]lthough a prisoner may satisfy the objective component of the Eighth Amendment test by showing that he was denied meaningful exercise for a substantial

period of time, temporary denials of exercise may be constitutional." *Davidson v. Coughlin*, 968 F. Supp. 121, 129 (S.D.N.Y. 1997) (holding that denial of exercise for fourteen consecutive days while inmate was in keeplock did not violate the Eighth Amendment). Here, the complaint does not allege that the lockdowns lasted long enough to implicate the Eighth Amendment because it is unclear how long the lockdowns lasted. Therefore, I recommend that the Court dismiss the claims regarding bathing, laundry, and exercise with leave to amend.

9.      Living Space

Plaintiff claims that the cramped conditions in the six-inmate cell violated his Eighth Amendment rights. (Dkt. No. 1 at 16-17 ¶¶ 26-27, 30.) Defendants move to dismiss this claim. (Dkt. No. 35-2 at 10-14.) For the reasons discussed below, I recommend that the Court dismiss this claim with leave to amend.

The practice of housing multiple inmates in a single cell has been the subject of extensive Eighth Amendment litigation. These cases illustrate that an inmate cannot state an Eighth Amendment violation based solely on a lack of living space. In *Rhodes*, inmates challenged the practice of double-celling inmates in cells that provided thirty-one square feet of living space per inmate. *Rhodes*, 452 U.S. 337. The Supreme Court held that the challenged double-celling was not unconstitutional because it did not lead to deprivations of essential food, medical care or sanitation, increase violence among inmates, or "create other conditions intolerable for prison confinement." *Id.* at 348. In *Chapdelaine v. Keller*, No. 95-CV-1126 (RSP/GLS), 1998 U.S. Dist. LEXIS 23017, 1998 WL 357350 (N.D.N.Y. Apr. 16, 1998),[10] an inmate alleged that the

_____

[10]      Defendants provided Plaintiff a copy of this unpublished decision with their moving papers. (Dkt. No. 35-5 at 13-24.)

four-inmate cells at FCI Ray Brook, which provided thirty square feet of living space per inmate, violated the Eighth Amendment because they fell below the square footage standards required by the American Correctional Association, had inadequate ventilation systems, lacked ladders to bunks, and lacked private sanitary facilities. *Chapdelaine*, 1998 WL 357350, at *4. The court granted the defendants' motion to dismiss, finding that the plaintiff "failed to allege that his placement in a four person cell denied him of a personal, medical, educational, or recreational need that is essential to life's necessities." *Id*. at *5. In *Jones*, New York state prisoners challenged the practice of double-celling inmates in cells that provided about twenty-five square feet of living space per inmate. *Jones*, 435 F. Supp. 2d 221. The court granted the defendants' motion for summary judgment. *Id*. The court noted that the "Constitution does not recognize a general amorphous conditions of confinement claim. Rather, plaintiffs must show how the combined effects of the [alleged] conditions deprive inmates of a single, identifiable human need such as food, warmth, or exercise." *Id*. at 236 (citing *Wilson v. Seiter*, 501 U.S. 294, 305 (1991)).

Here, as discussed in the sections above, Plaintiff has not alleged facts plausibly suggesting that the cramped living quarters deprive inmates of a single, identifiable human need such as food, warmth, or exercise. Thus, Plaintiff has not stated a claim that the limited living space in the six-inmate cells violates the Eighth Amendment.[11] Therefore, I recommend that the

---

[11]    Plaintiff cites *Karacsonyi v. Radloff*, 885 F. Supp. 368 (N.D.N.Y. 1995) for the proposition that a prisoner may state an Eighth Amendment conditions of confinement claim by alleging that he is confined to twenty-nine square feet of living space. (Dkt. No. 52 at 15-16.) It is true that the court in that case denied the defendants' motion to dismiss a prisoner's Eighth Amendment claim regarding crowded conditions in the four-inmate cells at FCI Ray Brook. The court stated that the plaintiff was entitled to proceed to discovery because "[q]uestions remain regarding the duration of this living situation, and whether it led to deprivations of essential

Court dismiss this claim with leave to amend.

## IV.     FAILURE TO SERVE DEFENDANTS WAGNER AND FEHLNER

Plaintiff has not served Defendants Wagner and Fehlner with the complaint.  Under the Federal Rules of Civil Procedure, a defendant must be served with the summons and complaint within 120 days after the filing of the complaint.  Fed. R. Civ. P. 4(m).  This 120-day service period is shortened, or "expedited," by the Court's Local Rules of Practice, which provide that all defendants must be served with the summons and complaint within sixty days of the filing of the complaint.  L.R. 4.1(b).  Here, more than 120 days have elapsed since the filing of the complaint and Defendants Wagner and Fehlner have not been served.  As a result, Plaintiff is currently in violation of both the Federal Rules of Civil Procedure and the Local Rules of Practice for this Court.

The Federal Rules of Civil Procedure provide that, if defendants are not served within the required time limit, a court may, on its own initiative after notice to the plaintiff, dismiss the action without prejudice.  Fed. R. Civ. P. 4(m).  I recommend that the Court dismiss the claims against Defendants Wagner and Fehlner without prejudice because they have not been timely served.  This Report-Recommendation will serve as notice to Plaintiff of the Court's intent to

---

needs, such as sanitation." *Karacsonyi*, 885 F. Supp. at 371.  That case, however, is distinguishable because it was decided under the more lenient pleading standard in effect before the Supreme Court's decisions in *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662.  Under the pleading standard in place at the time, a complaint would "not be dismissed for failure to state a claim unless it appear[ed] beyond doubt that the plaintiff c[ould] prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Under that standard, the *Karacsonyi* court properly allowed the plaintiff an opportunity to proceed to discovery.  Now, however, a plaintiff must plead facts plausibly suggesting a constitutional violation before he will be permitted to obtain discovery.  Plaintiff here has not done so.

dismiss the claims against Defendants Wagner and Fehlner. If Plaintiff objects to this proposed dismissal, he should file objections to this portion of the Report-Recommendation.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 35) be **<u>GRANTED</u>**. It is recommended that the following clams be dismissed without leave to amend: (1) the claim regarding access to cleaning supplies; (2) the claim regarding privacy; (3) the claim regarding cell searches; and (4) the claim regarding confiscated or damaged property. It is recommended that the following claims be dismissed with leave to amend: (1) the claim regarding the cleanliness of the cell toilet; (2) the claim regarding ladderless bunks; (3) the claim regarding ventilation; (4) the claim regarding fear of violence; (5) the claim regarding noise levels; (6) the claim regarding being punished for cellmates' actions; (7) the claims regarding lockdowns; and (8) the claim regarding living space; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Willey v. Kirkpatrick*, No. 07-CV-6484, 2013 U.S. Dist. LEXIS 14935, 2013 WL 434188 (W.D.N.Y. Feb. 4, 2013).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: March 7, 2013
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge