```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH M. DAVIS,

                    Plaintiff,              9:11-cv-1139
                                            (GLS/TWD)
         v.

RUSSELL A. PERDUE et al.,

                    Defendants.
_____
APPEARANCES:                                 OF COUNSEL:

FOR THE PLAINTIFF:
Joseph Davis
Pro Se
03992-070
Coolidge House
307 Huntington Avenue
Boston, MA 02115

FOR THE DEFENDANTS:
HON. RICHARD S. HARTUNIAN          PAULA RYAN CONAN
United States Attorney             Assistant U.S. Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198

Gary L. Sharpe
Chief Judge
```

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff *pro se* Joseph Davis commenced this action against

defendants Russell A. Perdue, Deborah G. Schult, David Porter, Stephen G. Wagner, Anne Mary Carter, Jon Hensley, Robin Van Weelden, Max Thwaites, Phil Hamel, John Fehlner, Joseph L. Norwood, David Washburn, Henry J. Sadowski, Harley G. Lappin, Harrell Watts, and Kathleen Kenney, under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971), alleging constitutional violations during his incarceration at the Federal Correctional Institution at Ray Brook. (Compl. ¶ 1, Dkt. No. 1 at 7.) Davis alleges a cruel and unusual punishment claim under the Eighth Amendment, as well as violations of his Fifth and Fourteenth Amendment due process rights in that defendants failed to properly investigate his grievances. (*Id.* ¶¶ 82-84, 85-87.) Davis seeks money damages and injunctive relief ordering defendants to take various steps to address his conditions of confinement. (*Id.* at 33-34.)

Upon initial review of Davis' complaint and *in forma pauperis* application pursuant to 28 U.S.C. § 1915, the court dismissed with prejudice Davis' investigation of grievances claim,[1] and dismissed without

---

[1] Because the investigation of grievances claim was the only claim asserted against defendants Norwood and Watts, (Compl. ¶ 86), those two defendants were dismissed with prejudice when that claim was dismissed, (Dkt. No. 7 at 11-12).

2

prejudice his conditions of confinement claims against Washburn, Sadowski, Lappin, and Kenney for lack of personal involvement. (Dkt. No. 7 at 12-13.) Davis did not seek to amend his complaint. The remaining defendants[2] have filed a motion to dismiss the complaint for failure to state a claim. (Dkt. No. 35.)

In a Report-Recommendation and Order (R&R) dated March 7, 2013, Magistrate Judge Therèse Wiley Dancks recommended that the motion to dismiss be granted, and the conditions of confinement claim be dismissed on the merits. (Dkt. No. 59 at 11-25, 26.) Because she dismissed the Eighth Amendment claim on the merits, Judge Dancks did not address defendants' argument regarding the failure to allege personal involvement of Hamel, Thwaites, and Perdue. (*Id.* at 11 n.5; Dkt. No. 35, Attach. 2 at 15-16.) Davis has filed objections to the R&R. (Dkt. No. 70.) Additionally, defendants have filed a letter motion requesting that the court reject the

---

[2] Defendants Wagner and Fehlner have not been served and thus have not moved to dismiss the complaint. (Dkt. No 35, Attach. 2 at 1 n.2.) In any event, Judge Dancks recommended that the claims against them be dismissed without prejudice because they have not been timely served pursuant to either the Federal Rules of Civil Procedure or the court's Local Rules of Practice, and Davis has not objected to this recommendation. (Dkt. No. 59 at 25-26.) This portion of the R&R is therefore adopted, and Wagner and Fehlner are dismissed from this action.

portions of the R&R that recommend dismissal of the claims against Schult, Porter, Carter, Hensley, and Van Weelden in light of the Second Circuit's recent decision in *Walker v. Schult*, 717 F.3d 119 (2d Cir. 2013), decided after the R&R was issued. (Dkt. No. 73 at 1.) However, as to Hamel, Thwaites, and Perdue, the government continues to seek dismissal because of Davis' failure to allege personal involvement. (*Id.* at 1-2.) For the reasons that follow, the portion of the R&R recommending dismissal of Perdue, Schult, Porter, Carter, Hensley, Thwaites, Hamel, and Van Weelden is rejected and defendants' motion to dismiss as against these defendants is denied.

## II. **Background**[3]

At the time relevant to this action, Davis was incarcerated in the Federal Correctional Institution at Ray Brook. (Compl. ¶ 23.) On July 14, 2010, Davis was assigned to a six-inmate cell, where he remained while incarcerated. (*Id.* ¶ 25.) Davis shared the cell with five other inmates, a space which totaled approximately 174 square feet, or twenty-nine square feet per inmate. (*Id.* ¶ 27.)

---

[3] The facts are drawn from Davis' complaint and presented in the light most favorable to him.

4

Davis was assigned an upper bunk, and, because the bunks did not have ladders mounted to them, he was forced to either use a plastic chair to climb up to his bunk, which at times caused him to fall to the floor, (*id.* ¶¶ 32-33), or to first step on the lower bunk to reach the upper bunk, which caused conflict between Davis and the inmate in the lower bunk, (*id.* ¶ 34). Davis alleges that he attempted to report these incidents to the guards on duty, but they were not reported in the housing unit's log book. (*Id.* ¶ 33.)

Davis alleges that the conditions in his housing unit were "unsafe and insecure" because at night, only one guard was assigned to oversee two housing units, and that in the event of an emergency, there may be no way to alert the guard on duty. (*Id.* ¶ 35.) He further alleges that there was an inadequate level of sanitation in his living environment. (*Id.* ¶ 38.) Specifically, he alleges that he had no access to cleaning supplies after 9:00 P.M., and that the provisions of cleaning supplies given to the inmates were insufficient to meet their needs. (*Id.* ¶¶ 39, 41.) As a result, on several occasions Davis attempted to use the toilet in his cell, but found it to be stained with feces. (*Id.* ¶ 43.)

Davis further alleges that the six-inmate cells do not have proper ventilation. (*Id.* ¶ 44.) Specifically, there is no circulation, particularly when

the cell door is closed, such that the six-inmate cells become substantially hotter than other cells, and become "much hotter during the summer months." (*Id.* ¶¶ 44-46.)  The inmates were prohibited from opening the food tray slots in the cell doors in order to provide additional ventilation, (*id.* ¶ 45), and they were sent a memorandum notifying them that they would be disciplined for covering ventilation grates in an attempt to prevent excessive heating, (*id.* ¶ 48).  As a result of the poor ventilation and the "stifling" atmosphere it created, Davis claims that he suffered several common colds, as well as insomnia and general difficulty sleeping.  (*Id.* ¶ 47.)  He also claims that excessive noise from other inmates and the industrial fans in the housing unit interfered with his ability to sleep.  (*Id.* ¶¶ 52-53.)

Davis alleges that the living conditions of the six-inmate cells afford no privacy, including when using the toilet, (*id.* ¶ 49), and that these conditions have led to constant tension and occasional conflicts between the inmates who shared his cell, (*id.* ¶¶ 49, 54).  Additionally, he alleges that all inmates of a six-inmate cell are held responsible when one of them violates prison rules, and that he is aware of several incidents where one inmate was disciplined for the misbehavior of another.  (*Id.* ¶¶ 55-56.)

Further, the six-inmate cells are allegedly searched more often than others, and Davis has had his personal property disturbed or confiscated by prison staff. (*Id.* ¶ 57.)

Davis claims that several times over the course of his incarceration in the six-inmate cell, Ray Brook has been placed on "lockdown status," which makes the living conditions even worse and heightens the tensions among the inmates. (*Id.* ¶¶ 59-60.) For example, the inmates are given only "meager" portions of food for meals, they are restricted from bathing for sometimes days at a time, they are not allowed to access laundry facilities or clean their clothes, the temperatures rise to "unbearable levels," and they are not given any substantial opportunities for exercise. (*Id.* ¶ 60.) Davis asserts that he brought his living conditions to the attention of Ray Brook staff numerous times, but no action was taken. (*Id.* ¶ 62.)

### III.  <u>Standard of Review</u>

Before entering final judgment, this court reviews report and recommendation orders in cases it has referred to a magistrate judge. If a party properly objects to a specific element of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo*. See *Almonte v. N.Y. State Div. of Parole*, No.

Civ. 904CV484GLS, 2006 WL 149049, at *3, *5 (N.D.N.Y. Jan. 18, 2006). In those cases where no party has filed an objection, only vague or general objections are made, or a party resubmits the same papers and arguments already considered by the magistrate judge, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.* at *4-5.

## IV. Discussion

Davis' objections here do not address any specific portions of Judge Dancks' R&R, and they are therefore construed as general objections meriting only clear error review. (Dkt. No. 70); *see Almonte*, 2006 WL 149049, at *4-*5. The court has reviewed for clear error Judge Dancks' recommendation that Wagner and Fehlner be dismissed because they have not yet been served, and the court has found none. Therefore, for the reasons articulated by Judge Dancks, this court adopts the portion of the R&R recommending dismissal of Wagner and Fehlner from this action.

With respect to the remaining defendants, as mentioned above, the government has submitted a letter request asking the court to reject as much of the R&R as recommended dismissal of the action as against Schult, Porter, Carter, Hensley, and Van Weelden. (Dkt. No. 73 at 1.)

8

That request is granted, and therefore the portion of the R&R recommending dismissal of these defendants is rejected, and the motion to dismiss them is denied.

However, the government continues to maintain that the other three defendants—Perdue, Thwaites, and Hamel—should be dismissed because of Davis' failure to allege their personal involvement in the claimed constitutional violations. (*Id.* at 1-2.) Because Judge Dancks recommended dismissal of the constitutional claims on the merits, she did not address defendants' personal involvement argument. (Dkt. No. 59 at 11 n.5.) The court therefore has conducted a *de novo* review of the personal involvement issue and, for the reasons that follow, denies defendants' motion to dismiss.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. *See id.*; *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

9

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [individuals] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Wright*, 21 F.3d at 501).

Defendants argue that it was not possible for Hamel, Thwaites, or Perdue to be personally involved in the claimed constitutional violations. (Dkt. No. 35, Attach. 2 at 15-16.) Specifically, they point to the fact that Davis initiated the administrative remedy process on July 19, 2010, but did not communicate his concerns to Hamel or Thwaites until July 2011, and that Perdue did not become Warden of Ray Brook until February 2011. (*Id.* at 15-16; Compl. ¶¶ 3, 72-73.) Therefore, they argue, Davis "does not allege any personal involvement on the part of [these three defendants] prior to [Davis'] initiating the administrative remedy process." (Dkt. No. 35, Attach. 2 at 15-16.) However, the constitutional violations of which Davis complains occurred "since July 14, 2010 and thereafter . . . and [Davis]

10

continues to suffer harm." (Compl. ¶ 1.) It therefore appears as though the unconstitutional conditions complained of by Davis were ongoing at the time he notified Hamel and Thwaites of the alleged violations. Specifically, Davis alleges that, in July 2011, he approached Hamel and Thwaites and informed them of his concerns regarding inadequate ventilation and the absence of ladders on the bunk beds. (*Id.* ¶¶ 72-73.) Davis alleges that Hamel and Thwaites referred him elsewhere and did not do anything to address the issues. (*Id.*) As to Perdue, Davis alleges that he circulated a memorandum in an attempt to prevent inmates from taking steps to address the inadequate ventilation. (*Id.* ¶ 48.) Additionally, Davis alleges that Hamel, Thwaites, and Perdue were regularly present in the housing units and therefore were "personally aware of the[] unconstitutional conditions of confinement." (*Id.* ¶ 64.) Given Davis' *pro se* status, and the liberal reading of his complaint to which he is entitled, at this juncture he has made sufficient allegations of personal involvement to withstand a motion to dismiss.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Thérèse Wiley Dancks' March 7,

2013 Report-Recommendation and Order (Dkt. No. 59) is **ADOPTED IN PART** and **REJECTED IN PART** as follows:

it is **ORDERED** that defendants' motion to dismiss (Dkt. No. 35) is **GRANTED** with respect to Wagner and Fehlner and the Clerk is directed to terminate them from this action; and it is further

**ORDERED** that defendants' motion to dismiss (Dkt. No. 35) is **DENIED** with respect to Perdue, Schult, Porter, Carter, Hensley, Thwaites, Hamel, and Van Weelden; and it is further

**ORDERED** that defendants' letter motion (Dkt. No. 73) requesting that the court reject the portions of the R&R recommending dismissal of Schult, Porter, Carter, Hensley, and Van Weelden is **GRANTED**; and it is further

**ORDERED** that the parties shall contact Judge Dancks to schedule further proceedings in accordance with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 13, 2014
Albany, New York